STATE EX REL. DUBIN, Appellant, vs. STATE BOARD OF MEDICAL EXAMINERS and others, Respondents.

*June 4—June 22, 1936.*

*A. W. Richter* and *Joseph A. Padway,* both of Milwaukee, for the appellant.

For the respondents there was a brief by the *Attorney General* and *Fred R. Wright* of Milwaukee, special counsel, and oral argument by *Mr. Wright.*

WICKHEM, J.    Prior to June 20, 1934, petitioner applied for and received permission to take an examination for a license to practice medicine in the state of Wisconsin.    This examination covered nineteen subjects which were separately graded and differently evaluated.   Upon this examination petitioner received a grade of seventy-four and four-tenths per cent according to his computation and seventy-three per cent according to that of the board.   His grade in roentgenology was forty per cent.   The passing grade was seventy-five per cent.    It was one of the rules of the board that any person taking an examination shall be considered to have failed if he shall have attained an average of less than seventy-five per cent upon the whole examination or less than sixty per cent in more than two subjects, and that such person shall be required to rewrite the entire examination.    Although under the rule required to rewrite the entire examination, petitioner was permitted to take a special examination in roentgenology after signing a paper reading as follows :

"In consideration of the Wisconsin Board of Medical Examiners granting me the privilege of writing a conditional examination in roentgenology at the Northland Hotel, Green

Bay, Wisconsin, on Wednesday, September 12, 1934, I hereby agree that said Board of Medical Examiners shall not be obliged to grade or approve such examination paper until said board is satisfied as to my preliminary or professional education, requirements or diploma, such determination to be made by said board by the time or at the time of the regular meeting of said board in January, 1935.

"[Signed]   W. V. Dubin, M. D."

On January 9, 1935, the board enacted the following resolution:

"That the board refuse to mark the conditional examination paper written by William Valdimar Dubin in the subject of roentgenology on September 12, 1934, at Green Bay, Wisconsin, and that it do not issue a license to said Dubin to practice medicine and surgery in the state of Wisconsin, for the reason that in the judgment of the board said Dubin has not completed the required medical studies to entitle him to practice medicine and surgery, or to graduate from a reputable medical college, and is not intellectually, morally or professionally qualified to practice medicine and surgery in the state of Wisconsin."

Thereafter, this action was commenced. Petitioner's relations with the board have extended over a considerable period, and at this point it may be useful to review in some detail the history of the controversy.

Petitioner's first application for permission to write the state board examination was on December 2, 1924. On January 13, 1925, he was refused permission to write the examination, first, because his record at Marquette University was irregular, and he had been dismissed for dishonesty and a poor record; second, because the petitioner's school, St. Louis College of Physicians and Surgeons, was an unapproved school and classified by the board as a diploma mill; and, third, because efforts to obtain data from the latter school as to his years of attendance, grades, and conduct were unavailing. He was at that time advised to secure a degree from a

reputable medical school. In 1926, petitioner appeared before the board with a diploma from Maximilian University in Würzburg, Germany, dated October, 1925. His application to write the examination was at that time denied because the foreign credentials were neither translated nor verified. In 1928, petitioner again requested permission to write the examination, but was told that the board had notice that his foreign diploma had been revoked. His application to write was denied in 1929, apparently for the same reason. In June, 1930, petitioner presented a certified statement coming from the American consulate to the effect that the revocation of petitioner's medical diploma had been rescinded. He was permitted to write the examination at that time and failed with a grade of sixty-four per cent. In January, 1931, petitioner wrote the examination again and failed with a grade of sixty-four per cent. In June, 1931, he was again examined and failed with a grade of sixty-three per cent. In January, 1932, he again failed with a grade of fifty-six per cent. In June, 1932, he again failed with the same grade. In January, 1933, he again failed the examination with a grade of sixty-six per cent. In January, 1934, his grade was sixty-nine per cent and in June, 1934, he had an average of seventy-three per cent according to the state board and seventy-four and four-tenths per cent according to his computations. This was the last examination taken by petitioner and was followed by the agreement signed by him and the special examination in roentgenology which the board declined to grade. The board, whether through a growing suspicion caused by consistently poor examinations or by reason of a change of personnel, decided to re-examine petitioner's qualifications to practice medicine and came to a conclusion adverse to the petitioner.

The first contention of the petitioner is that the agreement exacted from the appellant as a condition to his taking the

re-examination was discriminatory and beyond the power of the board. The wisdom of this as an administrative procedure may well be questioned, but it can hardly be condemned upon either of the grounds assigned. It doubtless has no standing as a contract, but it does evidence the conditions upon which the privilege of a special examination was given. The petitioner was not entitled under the rules of the board to have a special examination. He had not attained a passing grade on the examination. The special examination was a concession to him, and if there was discrimination, it was in his favor. We see no reason why the board might not make this concession conditional upon a recanvass of the facts bearing upon his educational and moral qualifications to practice medicine. This conclusion might well terminate this litigation. It leads to the conclusion that, not being entitled under the rules to the special examination, and the condition upon which the privilege was given never having been discharged, petitioner shows no right to have the paper examined. Until this is done and a passing grade established there is no right to compel issuance of a license, assuming all other points to be resolved in favor of petitioner.

The principal contention of the applicant is that Maximilian University is an accredited school; that its diplomas entitle the holder to take the state board examinations in Wisconsin; that the evidence and the findings of fact are to the effect that appellant holds the medical diploma from that school, and that the diploma is in full force and effect and unrevoked; and that the board has no rules as to conditions under which any accredited school may grant a diploma. It is further claimed that all of the matters bearing upon petitioner's possible disqualification to become a member of the medical profession were known long before the examination in question, and that there was no new information after the execution of the so-called agreement.

To the first contention it may be answered that under the provisions of sec. 147.17, Stats. 1933, six members of the board must find petitioner qualified before a license is to be issued. The term "qualified" has reference to the moral, professional, educational, and intellectual qualifications of the applicant. We discover no provision of the statutes that precludes the board, after accepting as *prima facie* satisfactory a showing by applicant upon any of these matters, from later coming to a different conclusion provided the ultimate judgment is not arbitrary or capricious. Nor does the purpose of the statute to protect the public against dishonest and incompetent practitioners point to any different conclusion. We do not deem the fact that the board knew all or nearly all of the facts concerning petitioner prior to the 1934 examination sufficient to raise an estoppel. Without discussing the very limited scope that the doctrine of estoppel must have in such a case, it may be said that the burden of establishing good moral character and other professional qualifications was upon the petitioner at the outset and remained upon him until the granting of a license by the board. It was his duty to make the showing as to these matters, and he cannot complain if the board, in spite of evidence that raised a healthy doubt as to his right ever to have a license, gave him the benefit of the doubt for several years and permitted him to take examinations, and later after a careful consideration of all the facts denied him a special privilege theretofore granted with respect to a conditional examination. Further than this, it is evident that the board did have new facts as will hereafter appear and that, even if it did not, the increasingly evident incongruity between the earning of a degree *cum laude* by petitioner at a reputable university and his consistent failure in a succession of eight examinations was a matter that could legitimately give to the board some concern as to the training and general competency of petitioner to practice, and

some degree of conviction that petitioner's success in graduation from a reputable school was at least grounded in mistake or misunderstanding. We think that there is no merit to the contentions with respect to estoppel.

The ultimate question in the case is whether the action of the board was arbitrary and capricious. This requires a short consideration of the matters upon which the board acted. The applicant stated in his application that he had attended high school in Russia and added "graduated 1916." In a letter to the secretary of the Medical Board of California petitioner stated that he attended high school in Russia up to June 5, 1914, whereas in an adverse examination held prior to the final resolution of the board he stated that he had come to Milwaukee on April 9, 1914.

In his applications to the Wisconsin board petitioner thus described his medical training:

"Medical, Surgical or Osteopathic Education: Marquette University School of Medicine, 1st. October 1918, June 1919 and from 1st October, 1920–21 Hahnemann Medical College, 1921–1922 Chicago.
"Freiburg University, Freiburg, Germany; Julius Maximilian University, Würzburg, Germany."

In his letter to the California board he thus lists his work:

"Marquette U. from Oct. 1, 1918 to 1919 Freshman; Marquette U. from Oct. 1, 1920 to 1921 Sophomore; Hahnemann Med. Col. Oct. 1, 1921 to 1922, Junior; St. Louis Col. of P. & S. Oct 1, 1922 to 1923, Senior."

The facts, as satisfactorily established, are that petitioner attended Marquette University School of Medicine during the school year 1918–1919, and that because of his poor scholastic record, he was advised to repeat the work of the first year. During the summer sessions of 1919 and 1920, petitioner earned some credit in the University of Wisconsin Medical School and was permitted in the fall of 1920 to re-enter Marquette and take second-year work upon probation.

He was dismissed from Marquette in February, 1921, for dishonesty in examinations and received no credit for the work done during the fall. While petitioner claims to have matriculated in Hahnemann Medical College in September, 1921, as a third-year student, it is evident that he could not possibly have been entitled to such standing, and the report of the American Medical Association was to the effect that he had been admitted as a special student taking freshman work, and that in October, 1922, he was declined the privilege of further registration because of poor scholarship. He then matriculated at St. Louis College of Physicians and Surgeons, a class C school, and rated a diploma mill by the board. The American Medical Association reports are to the effect that he was not included in a supposedly complete list of the graduates of the year of his claimed graduation. In January, 1925, he requested certain credentials from Marquette, and informed the registrar that he had taken a medical degree at the University of Vienna, although he had never attended this school.

While petitioner claims to have entered the University of Freiburg in Germany some time in February, 1925, and to have there pursued all the necessary medical courses, advices from that school indicate that he entered the summer session of 1925 and merely took some relatively unimportant laboratory courses. It further appears that in spite of petitioner's claim that he pursued medical studies at Maximilian University at Würzburg, the fact is that he never matriculated there, and that by a special dispensation he was permitted to present a doctor's thesis and take an examination at this school. Thus, the school which gave the degree had had no supervision over the medical training of the applicant, and gave the degree upon the faith of his preliminary work at other schools. This degree was later revoked by the Maximilian University because it had been "ascertained that the candidate does not possess the necessary preliminary edu-

cation and that the conferring of the degree is based on incorrect statements and presuppositions." In 1930, after representations made to the ministry of state through the office of the American consul, the action revoking the degree was rescinded "because there was no guilt on Dubin's part." It will at once be noted that the action rescinding the revocation of the degree makes no finding that the original action of revocation was founded upon mistake.

The foregoing facts are not in dispute, and there appears to be no likelihood that they can be successfully disputed. A refusal to grant a license on such facts cannot be the basis for a claim of arbitrary conduct by the board. It appears to us to be literally impossible to conclude upon the basis of these facts that petitioner had pursued successfully enough work to earn a degree at a reputable school, and the conclusion that the degree conferred by Maximilian University was conferred under a misunderstanding of the facts seems to us to be inevitable. The action of the faculty in revoking the degree, the restoration of the degree without any disclosure that the fact basis of the revocation had been discovered not to exist, and the uniformly poor record of the applicant in board examinations as well as in school, make the likelihood of his having properly earned a degree *cum laude* from a reputable school extremely slight. His testimony upon adverse examination was properly characterized by the board as evasive, and the whole record of the applicant was such as might well give concern to a board charged with the duty of protecting the public against dishonest or incompetent physicians.

It is next contended that no hearing or opportunity to be heard was given petitioner and that he was consequently denied due process. This contention is without merit. This action was taken at a regular meeting of the board. The time of such meetings is regulated by statute. Whatever materiality the agreement signed by petitioner and heretofore

discussed may have, it is clear that it notified him that action upon his preliminary training and general qualifications would be taken at this meeting. This was a sufficient notice, and he could have appeared and presented to such meeting any matters germane to the inquiry. In *Reetz v. Michigan,* 188 U. S. 505, 23 Sup. Ct. 390, 392, 47 L. Ed. 568, the court said, with reference to facts substantially like those in the case at bar :

". . . It is further insisted that it is essential to a judicial or *quasi-*judicial proceeding that it should give a person accused or interested the benefit of a hearing, and that there is in this statute no special provision for notice, or hearing, or authority to summon witnesses or to compel them to testify. The statute provides for semiannual meetings at specified times at the state capitol, but the plaintiff in error did not appear at any of these meetings or there present an application for registration or showing of his right thereto; he simply sent to the secretary of the board a certified copy of his registration under the prior statute, and his diploma from the Independent Medical College of Chicago, Illinois. The latter was returned with a notice from the board that it had denied the application for registration. When a statute fixes the time and place of meeting of any board or tribunal, no special notice to parties interested is required. The statute is itself sufficient notice. If plaintiff in error had applied at any meeting for a hearing the board would have been compelled to grant it, and if on such hearing his offer of or demand for testimony had been refused, the question might have been fairly presented to the state courts to what extent the action of the board had deprived him of his rights."

The trial court correctly concluded that petitioner was not entitled to the writ.

*By the Court.*—Judgment affirmed.